UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re: Case No. A06-00455-DMD<br><br>MARK J. AVERY,<br><br>Debtor. | Chapter 7<br><br>**Filed On**<br><br>**7/19/11** |
| WILLIAM M. BARSTOW, TRUSTEE and SECURITY AVIATION, INC., an Alaska corporation,<br><br>Plaintiffs,<br><br>v.<br><br>INGALDSON MAASEN & FITZGERALD, P.C.,<br><br>Defendant. | Adversary No. A08-90039-DMD |

**SECOND SUMMARY JUDGMENT MEMORANDUM**

On March 31, 2011, this court entered a memorandum and order on the parties' first round of summary judgment motions.[1] In accordance with the order, the plaintiffs were awarded $69,764.42 on their fourth cause of action, for conversion.[2] The conversion damages included five transfers IMF made to Robert Kane, which totaled $47,500.00.[3] The balance of the damages was for transfers IMF made from its trust account to pay for its

---

[1] Summ. J. Mem., entered Mar. 31, 2011 (Docket No. 60); Order on Summ. J. Mots., entered Mar. 31, 2011 (Docket No. 61).

[2] Order on Summ. J. Mots. (Docket No. 61), at 2.

[3] *Id.*

attorney fees. The plaintiffs were also awarded $35,764.42 on their ninth cause of action, for violation of the automatic stay and unlawful post-petition transfers.[4] However, because these transfers were also encompassed within the plaintiffs' conversion count, their net recovery was $69,764.42. The defendant sought summary judgment on the plaintiffs' counts for unjust enrichment and breach of fiduciary duty. The court granted summary judgment in favor of the defendant as to both of these counts, which will be dismissed, with prejudice.[5]

  The parties subsequently stipulated to another round of summary judgment motions. They have filed these motions along with accompanying briefs and affidavits. After oral argument on June 22, 2011, the motions are now ripe for decision. I will deny the defendant's motion for summary judgment on the issue of collateral estoppel. I will also deny the plaintiff's motion to strike. The plaintiff's supplemental motion for summary judgment will be granted.

  The basis for this court's jurisdiction and the background of this conflict were set forth in the summary judgment memorandum dated March 31, 2011. Pages 1 through 14 of that memorandum are incorporated herein by reference.[6]

---

[4] *Id.*

[5] *Id.* at 4.

[6] Summ. J. Mem. (Docket No. 60), at 1-14.

Defendant's Motion for Partial Summary Judgment on Issue of Estoppel

As noted above, the plaintiffs' conversion damages include five transfers, totaling $47,500.00, which IMF made to Robert Kane. IMF now argues that the plaintiffs cannot recover these funds from it under the doctrine of collateral estoppel. Specifically, IMF contends a prior settlement the trustee reached with Robert and Karen Kane bars recovery of these funds from IMF.

The plaintiffs allege that IMF is precluded from raising this defense because it was not raised in IMF's answer or in its later pleadings related to the first round of summary judgment motions. Ordinarily, I would agree with the plaintiffs. The settlement with the Kanes was approved by this court in January of 2008.[7] The plaintiffs' complaint against IMF was filed several months later, on October 22, 2008. Collateral estoppel should have been raised as an affirmative defense years ago, in IMF's answer. It was not.[8] On the other hand, the pretrial deadline for amendment of pleadings has been repeatedly extended in this case. Currently, no deadline is set for the amendment of pleadings.[9] Accordingly, the

---

[7] Order Granting Trustee's Appl. to Settle Claims Against Robert and Karen Kane, entered Jan. 23, 2008 (Docket No. 200) in *In re Avery*, Main Case No. A06-00455-DMD.

[8] IMF's answer was filed on Dec. 3. 2008 (Docket No. 8). Collateral estoppel was not included in its list of affirmative defenses. In its Supplemental Resp. to Pls.' Mot. to Strike, filed Jun. 9, 2011 (Docket No. 95), IMF contends that it did raise the issue of collateral estoppel in its answer, because it averred that the plaintiffs' claims were barred by the doctrines of waiver and estoppel. However, collateral estoppel is not subsumed within either of these defenses. It is a doctrine "quite distinct" from equitable estoppel. *Chilkoot Lumber Co. v. Rainbow Glacier Seafoods, Inc.*, 252 P.3d 1011, 1016 n.13 (Alaska 2011). Collateral estoppel is a branch of res judicata which, under Fed. R. Civ. P. 8(c)(1), must be affirmatively pled in an answer. Rule 8 is made applicable to adversary proceedings by Fed. R. Bankr. P. 7008.

[9] *See* Order Vacating All Pretrial Deadlines, entered Mar. 8, 2011 (Docket No. 59).

defendant could move to amend its answer to include collateral estoppel as an affirmative defense. It would not prejudice the plaintiffs if such amendment were permitted. I will therefore address the defendant's motion on the merits.

The plaintiffs' settlement with the Kanes came out of a separate adversary proceeding, *Barstow v. Kane*, Adv. No. A07-90018-DMD.[10] This action was commenced on May 9, 2007. The plaintiffs' complaint contained 10 counts, including conversion, turnover, actual and constructive fraudulent conveyance, preference, disallowance of Kane's proofs of claim filed in the Security Aviation and Mark Avery bankruptcies, equitable subordination of Kane's claims, and punitive damages. In the conversion and turnover counts, the plaintiffs sought to recover jewelry that Kane had purchased for $126,000.00, using pre-signed checks from Avery & Associates, and a $100,000.00 Winnebago which had been purchased by Mark Avery but was in Kane's possession. In their fraudulent conveyance and preference counts, the plaintiffs sought to recover $3,453,165.00. This sum represented net proceeds from sales of aircraft and other funds belonging to the debtor, and which had allegedly been transferred to Kane.

Trial in the Kane adversary proceeding was scheduled for December 11, 2007. However, on November 20, 2007, the plaintiffs moved to vacate the trial and gave the court notice of a pending settlement with the Kanes. The trustee promptly filed a motion to

---

[10] Complaint, filed May 9, 2007 (Docket No. 1), in *Barstow v. Kane*, Adv. No. A07-90018-DMD.

4

approve the settlement with the Kanes in the Avery bankruptcy case.[11] The settlement was duly noticed, and a hearing thereon was held on December 27, 2007. An order granting the trustee's settlement application was entered on January 23, 2008.[12]

The terms of the settlement agreement were clear.[13] The Kanes agreed to surrender the jewelry and the Winnebago the trustee. They expressly disclaimed any interest in these assets. The trustee agreed to pay Robert Kane, in care of IMF, $15,000.00 within 10 days of a final order approving the settlement. The proofs of claim Robert Kane had filed in the Avery and Security Aviation bankruptcies were disallowed. Kane agreed that he would not receive any distribution from either bankruptcy estate.

Paragraphs 5 and 6 of the settlement agreement are pertinent to the collateral estoppel issue now raised by IMF. These paragraphs provided:

> **5. Dismissal of Action and Release.** The parties shall file a stipulation to dismiss the Litigation, which stipulation shall state that the dismissal is with prejudice *except as specifically provided in the Settlement Agreement.* The stipulation for dismissal shall, except as expressly set forth herein, operate as a complete release of liability for all claims asserted by the Avery estate or the Security Aviation estate in the Litigation.

---

[11] Trustee's Appl. to Settle Claims Against Robert and Karen Kane, filed Nov. 30, 2007 (Docket No. 181), in *In re Avery*, Main Case No. A06-00455-DMD.

[12] Order Granting Trustee's Appl. to Settle Claims Against Robert and Karen Kane, entered Jan. 12, 2008 (Docket No. 200), in *In re Avery*, Main Case No. A06-00455-DMD. IMF's contention that this order was entered almost one year after the settlement was reached is contradicted by the record.

[13] The settlement agreement is attached to the Trustee's Appl. to Settle Claims Against Robert and Karen Kane (Docket No. 181), in *In re Avery*, Main Case No. A06-00455-DMD.

5

> The Kanes release any claims, known or unknown, against the Trustee, his agents and attorneys.
>
> **6. Reservation and Exceptions to Release.** The settlement shall not release any claims that any transfer of proceeds from the sale of any aircraft into an account owned or titled in the name of Paul Stockler, *or any subsequent transfer(s) from such accounts,* and thereafter, is avoidable under 11 U.S.C. §§ 544, 547 or 548. However, the Trustee shall not recover any additional monies from the Kanes on account of such transfers or any avoidance.[14]

Although the court approved the settlement, the parties never filed a stipulation to dismiss the Kane adversary proceeding. In March, 2008, the court noticed its intent to dismiss the adversary proceeding with prejudice, each party to pay its own fees and costs.[15] No party objected. The adversary proceeding was dismissed on the terms noticed by the court.[16] While the settlement agreement was not incorporated into the judgment itself, the adversary proceeding was dismissed because the settlement agreement had been approved by the court.

---

[14] Settlement Agreement at 2 (attached to the Trustee's Appl. to Settle Claims Against Robert and Karen Kane (Docket No. 181), in *In re Avery*, Main Case No. A06-00455-DMD) (emphasis added).

[15] Order Regarding Intent to Dism. Adversary Proceeding, entered Mar. 26, 2008 (Docket No. 36), in *Barstow v. Kane*, Adv. No. A07-90018-DMD.

[16] Judgment of Dismissal, entered Apr. 7, 2008 (Docket No. 39), in *Barstow v. Kane*, Adv. No. A07-90018-DMD.

6

"Federal law governs the collateral estoppel effect of a case decided by a federal court."[17]  Collateral estoppel will bar relitigation of an issue if the following three elements are satisfied:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.[18]

Here, none of these elements are satisfied.  Although a wide range of issues was presented in the prior litigation, IMF has failed to list one which is identical to an issue raised in the present litigation.  Additionally, no issues were actually litigated in the Kane case.  The adversary proceeding settled before any decision was made either at trial or through summary judgment.  Further, while IMF did appear in the prior case, it was as counsel to the Kanes.  IMF was not a party to the action, and no issues were litigated with respect to it.  Finally, there was no determination of an issue critical and necessary to the judgment entered by the court.  The case was simply dismissed after the settlement between the plaintiffs and the Kanes was approved.

---

[17] *Trevino v. Gates,* 99 F.3d 911, 923 (9th Cir. 1996) (citing *Fireman's Fund Ins. Co. v. Int'l Mkt. Place,* 773 F.2d 1068, 1069 (9th Cir. 1985)).

[18] *Trevino*, 99 F.3d at 923 (quoting *Town of N. Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir. 1993) (citations omitted)).

IMF argues that the plaintiffs' *settlement* with Kane collaterally estopps their present action against IMF. "But settlements ordinarily occasion no *issue preclusion* (sometimes called collateral estoppel), unless it is clear . . . that the parties intend their agreement to have such an effect."[19]

> "In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented. Thus consent judgments ordinarily support claim preclusion but not issue preclusion." This differentiation is grounded in basic res judicata doctrine. It is the general rule that issue preclusion attaches only "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to that judgment." "In the case of a judgment entered by confession, consent or default, none of the issues is actually litigated. Therefore, the rule of this Section [describing issue preclusion's domain] does not apply with respect to any issue in a subsequent action."[20]

The Kane settlement agreement did not preclude litigation between the plaintiffs and other parties, such as IMF, who had received proceeds from the sale of Security Aviation's aircraft. Paragraph 6 of the agreement expressly reserved these claims as to all transferees *except* the Kanes. It specified that the settlement "*shall not* release any claims that any transfer of proceeds from the sale of any aircraft into an account owned or

---

[19] *Arizona v. California,* 530 U.S. 392, 414 (2000) (emphasis in original).

[20] *Id.* (citations omitted).

titled in the name of Paul Stockler, or any subsequent transfer(s) from such accounts, and thereafter, is avoidable under 11 U.S.C. §§ 544, 547 or 548."[21] The subsequent phrase, which provided that "the Trustee shall not recover any additional monies from the Kanes on account of such transfers or any avoidance,"[22] provided relief to the Kanes only, and not to IMF. There is no basis for a claim of collateral estoppel under such circumstances. IMF's motion for summary judgment on collateral estoppel grounds will therefore be denied.

Plaintiffs' Motions to Strike and for Summary Judgment

The plaintiffs have moved to strike the defendant's motion for summary judgment as frivolous. They also seek attorney's fees for responding to the summary judgment motion. A court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."[23] While IMF's summary judgment motion lacked merit, it will be denied rather than stricken. Further, Rule 12(f) provides no basis for an award of attorney's fees. If the plaintiffs intended to seek attorney's fees as sanctions, such relief would need to be pursued under Fed. R. Bankr. P. 9011(c).[24]

---

[21] Settlement Agreement at 2 (attached to the Trustee's Appl. to Settle Claims Against Robert and Karen Kane (Docket No. 181), in *In re Avery*, Main Case No. A06-00455-DMD) (emphasis added).

[22] *Id.*

[23] Fed. R. Civ. P. 12(f), made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7012(b).

[24] This is a procedural observation, rather than an encouragement or recommendation.

9

The plantiffs seek summary judgment in two new respects. First, as a necessary corollary to seeking denial of IMF's summary judgment, they seek summary judgment against IMF on its collateral estoppel defense. As discussed above, IMF's collateral estoppel defense is meritless. The plaintiffs will be granted summary judgment on this issue.

The plaintiffs also seek summary judgment on a portion of their fraudulent transfer count. In their initial summary judgment motion, they sought to recover eight transfers, totaling $80,909.05, as fraudulent transfers. In my earlier summary judgment memorandum, I concluded that all of the elements needed to establish fraudulent transfers had been established except one – whether IMF had given "reasonably equivalent value" for the transfers. In denying the plaintiffs' motion for summary judgment, I stated:

> Both sides take broad strokes on the issue of reasonably equivalent value. The plaintiffs argue that *all* transfers from IMF's trust account to pay fees incurred after the criminal trial were made in payment for the debt of another, Kane, and therefore such payments provided no value to Security Aviation. They say that these miscellaneous fees, including those incurred on Kane's behalf in conjunction with the Avery bankruptcy, provided no value to Security Aviation. IMF argues that its fees did give value to Security Aviation, because Avery and Kane had identical interests and that its fees provided benefit to both. I feel there is a grey area in between these two positions. On the one hand, the interests of Kane, Avery and Security Aviation appear to have been so intertwined, with respect to the criminal charges, that IMF's

10

services in the criminal case arguably benefitted the interests of all three of these parties. Additionally, a review of IMF's fee itemization for services rendered post-trial indicate that it dealt with residual issues related to the criminal charges after the trial concluded. Further, a portion of IMF's post-trial fees were incurred on Avery's behalf and paid out of the retainer. However, to the extent that fees were incurred exclusively for the benefit of Kane, particularly with regard to representing his interests in the Avery and Security Aviation bankruptcies, these fees would provide no value to Security Aviation.

These issues cannot be determined in the summary judgment context. There are disputed issues of fact that must be resolved by the trier of facts, the jury. Summary judgment for the plaintiffs on their seventh cause of action will therefore be denied.[25]

The plaintiffs now seek partial summary judgment solely as to charges IMF incurred exclusively for the benefit of Kane in the Avery bankruptcy case, and for a matter entitled "Kane Spec. Ops. Gear." With respect to these charges, IMF has billed a total of $28,874.47 between October of 2006 through March of 2007.[26] IMF was paid for these services from the $150,000.00 it held in its trust fund. The court has previously determined that these funds belonged to Security Aviation.

---

[25] Summ. J. Mem. (Docket No. 60), at 42-43.

[26] Copies of the billing statements and trust account checks are attached as Ex. A to the Declaration of Gary Spraker, Docket No. 78.

11

Most of the payments at issue here are already included within the $69,764.42 of damages this court previously awarded the plaintiffs, for conversion and violation of the automatic stay. Just $8,731.15 constitutes "new" damages which are not included in the prior award. With regard to the charges at issue in the plaintiffs' supplemental summary judgment motion, IMF opened two new files. File No. 3169-003 was the "Kane/Spec. Ops. Gear" matter, and File No. 3169-004 was "Avery Bankruptcy Matter." The services billed under these files had no relation to the criminal trial, which IMF billed as "United States v. Kane, File No. 3169-001," nor to Avery's dispute with the May Smith Trust, which IMF billed as "Kane & Avery - Trust Matters, File No. 3169-002."[27] As noted above, I had previously indicated that IMF's services in connection with the criminal trial and the May Smith Trust may have given reasonably equivalent value to the debtors. However, a review of the fee itemizations for the two additional matters, File Nos. 3169-003 and 3169-004, reflects that these services were for the benefit of Kane, only, and provided no value to the debtors or the bankruptcy estates. The billing entries for "Kane/Special Ops Gear" are fairly cursory, but clearly relate to a "new matter" not connected with the criminal trial or Avery's dispute with the trust.[28]

---

[27] Spraker Decl., filed Oct. 5, 2010 (Docket No. 26), Ex. B.

[28] IMF's Nov. 24, 2006 statement includes several conferences with Kane, including one regarding "variety of matters" and the opening of a new file for Special Ops; and its March 9, 2007 statement lists a conference with Kane "regarding new matter." *See* Spraker Decl., filed Apr. 28, 2011 (Docket No. 78), Ex. A.

12

IMF's fee itemizations for the "Avery Bankruptcy Matter" simply confirm what the record reflects – IMF represented the Kanes in both Avery's bankruptcy case and the related bankruptcy of Security Aviation, Inc. IMF appeared on Robert Kane's behalf in both *In re Avery*, Main Case No. A06-00455-DMD[29] and *In re Security Aviation, Inc.*, Main Case No. A06-00559-DMD,[30] filed proofs of claim on behalf of Kane in both the Avery and Security Aviation bankruptcy cases,[31] and appeared on behalf of the Kanes in the adversary proceeding, *Barstow v. Kane*, Adv. No. A07-90018-DMD. IMF's billing statements list time for preparing Kane's proofs of claim. They also include time for conferences with Kane regarding bankruptcy strategy and dealing with the motorhome and "preference claims." IMF also attended the § 341 meeting on Kane's behalf.

None of the services billed by IMF for "Avery Bankruptcy Matter" benefitted the debtors or the bankruptcy estates. They were provided solely for the benefit of a creditor in these bankruptcy cases. Creditors' attorneys are not entitled to recover their fees from the bankruptcy estate. An attorney's representation of a creditor does not provide reasonably equivalent value to the bankruptcy estate.

---

[29] Entry of Appearance, filed Nov. 20, 2006 (Docket No. 46), in *In re Avery*, Main Case No. A06-00455-DMD.

[30] Entry of Appearance, filed Apr. 2, 2007 (Docket No. 87), in *In re Security Aviation*, Main Case No. A06-00559-DMD.

[31] In *In re Avery*, Main Case No. A06-00455-DMD, IMF filed Claim No. 19-1 on Robert Kane's behalf on Jan. 19, 2007, and filed an amended claim, Claim No. 19-2, on Jan. 29, 2007. In *In re Security Aviation, Inc.*, IMF filed Claim No. 3-1 on Kane's behalf on Jan. 19, 2007, and amended Claim No. 3-2 on Jan. 29, 2007. Kane claimed he was owed in excess of $3 million from Avery and Security Aviation.

IMF argues that summary judgment cannot be granted to the plaintiffs because I had previously indicated that reasonably equivalent value was a factual issue which should remain for trial. IMF is correct with regard to its fees for services arising out of the criminal trial and its brief representation of Avery relating to the trust dispute. However, the two billing matters specifically addressed by the plaintiffs here clearly provided no benefit to either Avery or Security Aviation. IMF also contends that its billing statements for the "Avery Bankruptcy Matter" and the "Kane/Special Ops. Gear" matter give rise to additional questions of fact which should be submitted to the jury. I have reviewed the statements extensively and I disagree. Moreover, if the billing statements were erroneously prepared or somehow provided undisclosed benefits to Avery or Security Aviation, Mr. Fitzgerald or Mr. Rader should have filed affidavits to that effect. In the absence of such affidavits, I conclude that plaintiffs' motion is well taken. Their motion for partial summary judgment will be granted.

Conclusion

The defendant's motion for summary judgment based on collateral estoppel will be denied; the plaintiff's motion for summary judgment on the defense of collateral estoppel will be granted. The plaintiffs' motion to strike and for attorney's fees will be denied. The plaintiff's motion for partial summary judgment on charges incurred exclusively for the benefit of Robert Kane will be granted. An order will be entered consistent with this

memorandum. However, no final judgment will be entered until all remaining issues are resolved.

DATED: July 19, 2011.

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve: G. Spraker, Esq.
M. Peterson, Esq.

07/19/11